## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DOMINIQUE LEE ANN SMITH**                                    **PLAINTIFF**

**V.**                              **NO. 4:22CV01273 JM-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge James M. Moody, Jr. Either party may file written objections

to this Recommendation. If objections are filed, they should be specific and should

include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk

within fourteen (14) days of this Recommendation. If no objections are filed, Judge

Moody can adopt this Recommendation without independently reviewing the

record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Dominique Lee Ann Smith ("Smith"), applied for supplemental

security income benefits on January 9, 2020, alleging a disability onset date of June

1, 2019.[1] (Tr. at 116-34). After conducting a hearing, the Administrative Law Judge

---

[1] Smith subsequently amended her alleged onset date to January 9, 2020. *Id*.

("ALJ") denied her application on January 12, 2022. *Id*. The Appeals Council denied her request for review (Tr. at 1-7). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Smith has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II.   The Commissioner's Decision:

Smith was born on November 7, 1981, has a limited education, and worked in the past as a sandwich maker. (Tr. at 131).

The ALJ found that Smith had not engaged in substantial gainful activity since the amended alleged onset date of January 9, 2020.[2] (Tr. at 119). At Step Two, the ALJ found that Smith had the following severe impairments: degenerative disc disease, left-ankle degenerative joint disease, congestive heart failure, seizure disorder, chronic obstructive pulmonary disease (COPD), obesity, migraine headaches, major depressive disorder, bipolar disorder, generalized anxiety disorder, personality disorder, and post-traumatic stress disorder (PTSD). *Id.*

After finding that Smith's impairments did not meet or equal a listed

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g

impairment (Tr. at 119-121), the ALJ determined that Smith had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) she can no more than occasionally climb stairs; (2) she can never climb ladders or scaffolds; (3) she can no more than occasionally kneel, crouch, and crawl; (4) she can have no exposure to heights or to hazards like moving machinery or open flames; (5) she cannot engage in commercial driving; (6) she must avoid concentrated exposure to pulmonary irritants; (7) she can understand, remember, and carry out simple instruction; (8) she can occasionally interact with coworkers and the general public; and (9) she can adapt to occasional changes in a routine work setting. (Tr. at 123).

The ALJ determined that Smith is unable to perform any of her past relevant work. (Tr. at 131). Relying upon the testimony of the Vocational Expert ("VE"), the ALJ found that, based on Smith's age, education, work experience and RFC, jobs existed in the national economy that she could perform. (Tr. at 131-133). Therefore, the ALJ found that Smith was not disabled. *Id*.

III.   **Discussion**:

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.   Smith's Arguments on Appeal

Smith contends that the evidence supporting the ALJ's decision to deny

benefits is less than substantial. She argues that: (1) the ALJ should have found schizophrenia to be a severe impairment at Step Two; and (2) the ALJ did not properly consider or discuss the opinions of Smith's treating therapist, Stacey Kuchniski, LCSW. The Court finds support for Smith's second argument.

The ALJ recognized that Smith suffered from a variety of physical impairments. The Court, however, bases its opinion on mental impairments, and will limit its discussion thereto.[3]

Smith suffered from years of psychological and sexual abuse, and she suffered panic attacks as a result. She also endorsed paranoid ideations, suicidal ideations, and perceptual disturbances. (Tr. at 726, 731, 970, 1323-1324, 2155-2158). She had trouble sleeping and experienced hallucinations, and Smith had been hospitalized for mental issues in the past. (Tr. at 2011). In January 2020, her psychiatrist, Dr. Jeffrey Rains, wrote that Smith "has failed Prozac, Effexor, bupropion, citalopram, Geodon, lithium, and Risperdal in an attempt to control mood swings and sad moods." (Tr. at 970). He noted chronic panic attacks. *Id*. He said that Smith's excessive worrying and anxiousness were "worsening." *Id*.

Smith treated with her therapist, LCSW Kuchniski, throughout 2020 and

---

[3] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

2021. Ms. Kuchniski was aware of Smith's mental struggles and observed her difficulty in interpersonal relationships. (Tr. at 1777-1782, 2016-2040). Smith told her that she had problems feeling safe, related to PTSD exacerbations. (Tr. at 2016). Smith treated her with medications and cognitive behavioral therapy, sometimes as often as once a week.

The ALJ reviewed statements and letters from LCSW Kuchniski. (Tr. at 1780-1785, 2837-2840). In these opinion statements, LCSW Kuchniski said that Smith would be moderately, markedly, or extremely limited in completing many mental functions in a work environment. *Id*. She could not keep a regular schedule or perform basic tasks. *Id*. The ALJ found these opinions to be only partially persuasive: he wrote that they are "neither supportable by any objective findings referred to in the opinion[s] '(there are none)' nor consistent with the objective medical record and the record as a whole."[4] (Tr. at 130). The ALJ explained this by

---

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

citing to his own findings that Smith's difficulties would be only moderate in nature.[5] *Id.* The ALJ's reasoning is conclusory at best, and he is incorrect when he says "there are none" about objective findings to support LCSW Kuchniski's opinions. The record contained many treatment records with objective findings about mental status, consistent reports of Smith's symptoms, and her response to cognitive behavior therapy and medication management. (Tr. at 2016-2042). There was also a March 2020 statement by one of Smith's doctors, who evaluated her physical and psychiatric condition and found that she would be "unable to work at this time." (Tr. at 130, 1023). The ALJ found this opinion to be unpersuasive. (Tr. at 130).

A neuropsychologist conducted several objective and subjective mental function tests in 2021 and found that Smith placed in the severe range for anxiety and depression. (Tr. at 128, 2601-2611). That examiner said, however, that her conclusion was complicated by a number of factors, which means the ALJ probably

---

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips, supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

[5] Throughout the decision, the ALJ declined to adopt other medical opinions, giving conclusory explanations with no citation to record evidence. (Tr. at 127-130).

should have obtained additional testing or opinions, since he discounted other medical opinions.[6]

An ALJ may not simply provide boilerplate, conclusory language about whether he finds an opinion persuasive; that is exactly what the ALJ did here.[7] This anemic explanation by the ALJ frustrates meaningful judicial review.

The Court observes that the ALJ gave great weight to Smith's ability to perform some daily activities. Smith suffers from severe mental illness, and her providers encouraged her to try doing things to improve mood and sleep. This is part of a typical psychiatric treatment plan, and it should not count against Smith, especially when some of the daily activities compounded her problems.[8]

The ALJ also did not discuss schizophrenia at Step Two, although there is

---

[6] The state-agency psychiatric experts reviewed the records and found that due to mental illness and its effect on every part of Smith's life, she would be limited by an RFC for simple work, with complexity of tasks learned and performed by rote, with few variables and little judgment, and where supervision is simple, direct, and concrete. (Tr. at 233-235, 255-261). Confoundingly, the ALJ decided that these opinions were only partially persuasive because they were not expressed in vocational terms. The restrictions listed in those opinions and cited in this paragraph are most certainly vocational RFC terms, detailing the precise mental restrictions that Smith would face in the work world.

[7] See *Lucus v. Saul*, 960 F.3d 1066 (8th Cir. 2020) (reversal required when an ALJ discredited the opinion of the DIB applicant's treating physician with a blanket statement that the opinion was "internally inconsistent and contradicted by the record and her own treatment notes."); *Guess v. Kijakazi*, No. 4:20-CV-887-JTR, 2021 U.S. Dist. LEXIS 241709, 2021 WL 5983193, at *3-4 (E.D. Ark. Dec. 17, 2021) (ALJ did not fully discuss supportability and consistency of a medical opinion).

[8] Maintaining personal relationships proved very difficult for Smith. (Tr. at 2011-2035).

record of that diagnosis and symptoms related thereto.

## IV. <u>**Conclusion**</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to properly analyze the medical opinions.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 17th day of October, 2023.

_____
UNITED STATES MAGISTRATE JUDGE